IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN GLYNN,<br><br>    Plaintiff,<br><br>  v.<br><br>CIGAR STORE, INC.,<br><br>    Defendant. | Case No. 18-cv-00031-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 17 |

Before the Court is plaintiff Bryan Glynn's ("Glynn") Motion for Default Judgment, brought pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, and filed May 7, 2018.[1]  By order filed June 6, 2018, the Court afforded Glynn an opportunity to file supplemental declarations, which Glynn subsequently filed.  Having read and considered the papers filed in support of the instant motion, including the supplemental declarations, the Court rules as follows.[2]

## BACKGROUND[3]

Glynn is a "professional photographer."  (See Dkt. No. 1 ("Compl.") ¶ 2.)  "In 2009, Glynn created a photograph" of a Don Diego cigar (the "Work") (see id. ¶ 11), and, "[a]t the time he created the Work, . . . applied copyright management information to the Work

---

[1] On May 24, 2018, Glynn served defendant Cigar Store, Inc. d/b/a Cigar Store Online ("CSI") with notice of the instant motion.  To date, CSI has not filed a response.

[2] By order filed June 26, 2018, the Court vacated the hearing scheduled for July 6, 2018, and took the matter under submission.

[3] The following facts are taken from the complaint and declarations filed in support of the instant motion.

consisting of the words '© 2009 Bryan Glynn' in the bottom left corner of the photograph" (see id. ¶ 12). On October 22, 2015, Glynn registered the Work with the United States Copyright Office. (See id. ¶ 13 & Ex. 1.)

On January 24, 2017, Glynn "discovered the unauthorized use of [the Work] on [CSI's] website" (see Glynn Decl., filed June 6, 2018, ¶ 4; see also Compl. Ex. 2), through which CSI sells cigars, including Don Diego cigars (see id. ¶¶ 4, 16 & Ex. 2). In reproducing the Work on its website, CSI removed the copyright management information. (See Compl. ¶ 36 & Ex. 2.)

On May 11, 2017, Glynn's counsel sent a letter to CSI demanding that CSI "cease and desist" its infringement and compensate Glynn for its unauthorized use of the Work. (See id. Ex. 3.) Although CSI thereafter ceased its infringing use of the Work, CSI has not agreed to compensate Glynn. (See Glynn Decl., filed June 20, 2018, ¶ 7 (stating the Work was "taken down by [CSI] sometime after May 11, 2017"); Compl. ¶ 23 (alleging that, "[t]o date, the parties have failed to resolve [the] matter").)

Based on the above, Glynn, on January 3, 2018, filed the instant action, by which he asserts the following two claims for relief: (1) "Copyright Infringement," brought pursuant to the Copyright Act, 17 U.S.C. § 101, et seq., and (2) "Removal of Copyright Management Information," brought pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, et seq.

On January 16, 2018, Glynn completed service of the summons and complaint on CSI's registered agent for service of process (see Dkt. No. 9), and, on February 22, 2018, CSI having failed to respond to the complaint or otherwise appear, Glynn moved for entry of default against CSI, which default was entered by the Clerk of Court on February 23, 2018 (see Dkt. Nos. 13-14).

**DISCUSSION**

By the instant motion, Glynn seeks entry of a default judgment against CSI, pursuant to Rule 55(b)(2), as well as statutory damages, a permanent injunction, and attorney's fees and costs.

2

## A. Jurisdiction

Before a court may enter a default judgment, the court must determine that it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) (holding, where default judgment is sought, court has "affirmative duty to look into its jurisdiction over both the subject matter and the parties").

Here, as Glynn asserts claims under the copyright laws of the United States, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions). The Court also has personal jurisdiction over CSI, a "California corporation with its principal place of business" in "San Ramon, California." (See Compl. ¶ 10.)

## B. Eitel Factors

Once the court establishes it has jurisdiction, its "decision whether to enter a default judgment is a discretionary one." See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit considers the following factors to determine whether entry of a default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the above-listed factors, courts must take all "factual allegations in the plaintiff's complaint, except those relating to the amount of damages, . . . as true." See TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation and citation omitted).

### 1. First Eitel Factor: Possibility of Prejudice to Plaintiff

The first factor considers whether the plaintiff "will be prejudiced if the Court denies default judgment." See Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010) (citing Eitel, 782 F.2d at 1471). Here, CSI has failed to participate in the

above-titled action, and, consequently, Glynn will be unable to adjudicate his claims or recover damages unless the Court enters a default judgment against CSI.

Accordingly, the first factor weights in favor of entry of a default judgment.

### 2. Second and Third Eitel Factors: Merits of the Claim and Sufficiency of the Complaint

As, upon entry of default, all factual allegations are taken as true for purposes of establishing the defendant's liability, see TeleVideo, 826 F.2d at 917, courts consider the second and third Eitel factors together, see, e.g., Autodesk, Inc. v. Flores, No. 10-CV-01917, 2011 WL 337836, at *3 (N.D. Cal. Jan. 31, 2011).

#### a. Copyright Infringement Claim

A plaintiff bringing a claim for copyright infringement must show "(1) ownership of the copyright; and (2) infringement—that the defendant copied protected elements of the plaintiff's work." See Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000). Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work, which is generally the creator of the copyrighted work." See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1015 (9th Cir. 2012) (internal quotation and citation omitted) (citing 17 U.S.C. § 201(a)).

Here, Glynn alleges he "created" the Work (see Compl. ¶ 11), which contains copyrightable elements, specifically, Glynn's decisions regarding lighting, shading, angle, and background, see, e.g., Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1071, 1076 (9th Cir. 2000) (holding photographs of Skyy vodka bottle in front of "plain white or yellow backdrop, with back lighting" were copyrightable; noting "almost any[] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of photograph, [and] lighting") (alterations in original) (internal quotation and citation omitted). Glynn also alleges CSI, without authorization, displayed the Work on its website. (See Compl. ¶¶ 15-20 & Ex. 2.) Consequently, Glynn has established CSI's liability under the Copyright Act.

### b. Removal of Copyright Management Information Claim

Glynn's claim under the DMCA is brought pursuant to 17 U.S.C. § 1202, which provides, in relevant part:

> No person shall without the authority of the copyright owner or the law—
> (1) intentionally remove or alter any copyright management information,
> . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

See 17 U.S.C. § 1202(b). The DMCA defines "copyright management information" as, inter alia, "[t]he name of, and other identifying information about, the author of a work." See 17 U.S.C. § 1202(c)(2).

Taken as true, Glynn's allegations establish that CSI intentionally removed the watermark, "© 2009 Bryan Glynn," from the Work in order to display the Work on its commercial website, without authority to either remove such information or display the Work. (See Compl. ¶¶ 12, 24-25.) Glynn has also provided a copy of the Work, which contains the copyright management information, and the Work as displayed by CSI, which photograph does not contain such information. (See Compl. ¶ 11 & Ex. 2.) Consequently, Glynn has established CSI's liability under the DMCA.

Accordingly, the second and third factors weigh in favor of entry of a default judgment.

### 3. Fourth Eitel Factor: Sum of Money at Stake

The fourth Eitel factor "examines the amount of money at stake in relation to the seriousness of a defendant's conduct." See Craigslist, 694 F. Supp. 2d at 1060. Here, Glynn seeks $175,000 in statutory damages. Although entry of a default judgment may not be appropriate where the amount of money at stake is substantial or unreasonable, see Eitel, 782 F.2d at 1472 (finding three million dollar claim in questionable legal malpractice action weighed against entry of default judgment), Glynn seeks only statutory damages, the amount of which is left to the Court's discretion, see 17 U.S.C. § 504(c)(1); 17 U.S.C. § 1203(c)(3)(b). Moreover, $150,000 of the amount claimed here is sought pursuant to the Copyright Act, and, as discussed below, Glynn is barred from recovering statutory damages thereunder.

5

Accordingly, the fourth factor weighs neither in favor of nor against entry of a default judgment.

### 4. Fifth Eitel Factor: Possibility of a Dispute Concerning Material Facts

Upon entry of default, the defendant is deemed to have admitted all well-pleaded facts in the complaint, except those relating to the amount of damages. See Benny v. Pipes, 799 F.2d 489, 495 (9th Cir.1986) (holding "[w]ell-pleaded allegations are taken as admitted on a default judgment"). Here, CSI, despite having been served with the complaint and instant motion, has not responded to the complaint or moved to set aside the entry of default, and thus has made clear that it does not intend to contest the allegations asserted against it.

Accordingly, the Fifth factor weighs in favor of entry of a default judgment.

### 5. Sixth Eitel Factor: Whether Default was Due to Excusable Neglect

As noted, CSI has been served with both the complaint and instant motion. Additionally, CSI, in an email to Glynn's counsel, has acknowledged its awareness of the instant action. (See Grossbardt Decl., filed May 7, 2018, Ex. G (stating CSI "received a summons" in the instant action).) Under such circumstances, and absent any explanation for CSI's failure to appear, CSI's default cannot be attributed to excusable neglect. See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding defendants' default could not be "attributed to excusable neglect" where defendants were "properly served with the [c]omplaint, the notice of entry of default, as well as the papers in support of" the motion for default judgment).

Accordingly, the sixth factor weighs in favor of entry of a default judgment.

### 6. Seventh Eitel Factor: Policy Favoring Decision on the Merits

"[W]here a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted." See Craigslist, 694 F. Supp. 2d at 1061 (internal quotation and citation omitted). Here, CSI has failed to participate in the instant action, preventing a decision on the merits.

Accordingly, the seventh factor favors entry of a default judgment.

### 7. Summary of Eitel factors

In sum, the Eitel factors weigh in favor of entry of a default judgment against CSI. The Court next turns to the relief requested.

## C. Statutory Damages

Pursuant to both the Copyright Act and DMCA, a plaintiff may, prior to entry of a final judgment, elect to recover an award of statutory, rather than actual, damages. See 17 U.S.C. § 504(c)(1); 17 U.S.C. § 1203(c)(1). Here, Glynn seeks statutory damages under both statutes.

### 1. Statutory Damages Under the Copyright Act

Pursuant to § 412 of the Copyright Act, and subject to limited exceptions not applicable here, "in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication" by the copyright holder, in which case statutory damages may be recovered for any infringement commenced during such three-month period. See Derek Andrew, Inc. v. Proof Apparel Corp., 528 F.3d 696, 699 (9th Cir. 2008) (citing 17 U.S.C. § 412(2)); see also Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003) (holding, "if a work is unpublished and unregistered at the time of infringement, no statutory damages or attorney's fees are available"). "[T]he first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." See Derek Andrew, Inc., 528 F.3d at 701

Here, Glynn has submitted evidence showing CSI's infringing use of the Work dating back to June 25, 2014, over a year before Glynn's October 22, 2015, registration of the Work. (See Glynn Decl., filed June 20, 2018, ¶ 6 (stating "Internet Archive shows [CSI's] use of [the Work] going back to June 25, 2014"); see also id. Ex. A (Internet Archive screenshot showing CSI's infringing use of the Work on June 25, 2014).

Accordingly, Glynn is barred from recovering statutory damages under the Copyright Act.

### 2. Statutory Damages Under the DMCA

As discussed above, Glynn brings his DMCA claim under § 1202. Pursuant to the DMCA, a court, in its discretion, can award statutory damages of not less than $2500, but not more than $25,000, per violation of § 1202. See 17 U.S.C. § 1203(c)(3)(B). Here, Glynn seeks statutory damages in the amount of $25,000.

Although statutory damages are intended to serve as a deterrent, plaintiffs are "not entitled to a windfall," and, consequently, the amount awarded should bear a "plausible relationship to the plaintiff's actual damages." See Flores, 2011 WL 337836, at *8 (internal quotation and citation omitted). In this instance, Glynn has not shown what damages, if any, he incurred as a result of CSI's removal of the copyright management information.

Under such circumstances, the requested sum of $25,000 is excessive, and, considering the violation alleged, namely, removal of information from a single image, as well as the limited nature of CSI's use of that image and voluntary cessation of such use, the Court finds an award of $3500 under the DMCA is appropriate.

### D. Permanent Injunction

Pursuant to § 502 of the Copyright Act, courts may grant injunctive relief "reasonable to prevent or restrain infringement of a copyright." See 17 U.S.C. § 502(a). "[E]ven in a copyright infringement case, the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent." See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011).

Here, Glynn has failed to show he is likely to suffer irreparable harm absent injunctive relief. Indeed, as Glynn acknowledges, CSI voluntarily ceased its use of the Work after receiving the May 11, 2017, demand letter (see Glynn Decl., filed June 20, 2018, ¶ 7), and Glynn's conclusory assertion that CSI "may again willfully infringe" upon the Work (see Mot. 17:5) is insufficient to support a finding of irreparable harm, see In re Excel Innovations, Inc., 502 F.3d 1086, 1098 (9th Cir. 2007) (holding "[s]peculative injury cannot be the basis for a finding of irreparable harm").

1    Accordingly, Glynn's request for a permanent injunction will be denied.

2    **E. Attorney's Fees and Costs**

As noted above, Glynn is barred from recovering attorney's fees under the Copyright Act. See 17 U.S.C. § 412. Pursuant to the DMCA, however, the Court may award reasonable attorney's fees, as well as costs, to the prevailing party. See 17 U.S.C. § 1203(b). Here, Glynn, having prevailed on his DMCA claim, requests $6279 in attorney's fees and $538.77 in costs. The Court addresses each request in turn.

   **1.    Attorney's Fees**

   **a.    Reasonable Hours Expended and Reasonable Hourly Rate**

The Ninth Circuit applies the lodestar method to determine a reasonable attorney's fee, "multiplying the number of hours reasonably expended by a reasonable hourly rate." See Ryan v. Editions Ltd. W., Inc., 786 F.3d 754, 763 (9th Cir. 2015). A "reasonable" number of hours is "[t]he number of hours . . . [which] could reasonably have been billed to a private client." See Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013) (alterations in original) (internal quotation and citation omitted). "In determining the reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986). The relevant community is generally the "forum in which the district court sits." See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008).

Here, Glynn seeks $6279 in fees incurred for 17.4 hours of work. In support of his motion, Glynn has submitted a detailed breakdown of the hours expended by his counsel and the hourly rates charged for such work. (See Grossbardt Decl., filed May 7, 2018, ¶¶ 8-12 & Ex. H). Specifically, Glynn's counsel, who has been practicing law for ten years, performed a total of 14.7 hours of work at a rate of $395 an hour, and a paralegal performed 2.7 hours of work at a rate of $175 an hour. (See id. Ex. H; see also Grossbardt Decl., filed June 20, 2018, ¶ 2.) Courts in this district have found similar, if not higher, rates and numbers of hours to be reasonable under circumstances closely

1  resembling those presented here.  See, e.g., Myeress v. USA World Business Services,
2  Inc., No. 16-CV-05236, 2017 WL 990587, at *6 (N.D. Cal. Mar. 3, 2017) report and
3  recommendation adopted by 2017 WL 976916 (N.D. Cal. Mar. 14, 2017) (awarding, on
4  motion for default judgment in copyright action, $7877.50 in fees for 22.3 hours of work;
5  finding hourly rates of $395 and $295 for associate with four years experience and
6  paralegal, respectively, reasonable).

### b. Adjustment in Light of Result Achieved

Where the prevailing party succeeds on only some of his claims for relief, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry."  See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  Under such circumstances, to determine whether such initial calculation produces a reasonable fee, a court must consider whether the claims on which the plaintiff failed to prevail were related or unrelated to the claims on which he succeeded, as work expended on "unrelated claim[s] cannot be deemed to have been expended in pursuit of the ultimate result achieved."  See id. at 434-35.

Claims are "related" if they share a "common core of facts or will be based on related legal theories."  See id. at 436.  Here, Glynn's Copyright Act and DMCA claims share a "common core of facts," and, consequently, are related.  Where successful and unsuccessful claims are related, the court essentially looks to the "overall relief obtained."  See id.  In this instance, given the relief obtained, the Court finds the modest fee award requested should not be reduced "simply because [Glynn] failed to prevail on every contention raised in the lawsuit."  See id. at 435.

Accordingly, Glynn's request for attorney's fees will be granted.

Glynn's request for "leave to submit documentation supporting any additional fees" (see Mot. at 18:18), however, will be denied, as any fees incurred after the filing of the motion would relate solely to the preparation of the supplemental declarations, which pertain almost entirely to Glynn's unsuccessful request for statutory damages under the Copyright Act.  See Hensley, 461 U.S. at 435 (holding fees for work not "expended in

1 pursuit of the ultimate result achieved" not recoverable).

**2. Costs**

Glynn seeks $538.77 in costs, consisting of a $400 filing fee, $116.65 for service of process, and $22.12 for "[d]isbursement to courier for shipment of documents." (See Grossbardt Decl. ¶¶ 6-7 & Ex. H.) Such costs were reasonably incurred.

Accordingly, Glynn's request for costs will be granted.

**F. Post-Judgment Interest**

Lastly, Glynn seeks post-judgment interest pursuant to 28 U.S.C. § 1961. Under § 1961, "the award of post judgment interest on a district court judgment is mandatory," and shall be recoverable on all aspects of the judgment. See Barnard v. Theobald, 721 F.3d 1069, 1078 (9th Cir. 2013). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." See 28 U.S.C. 1961(a).

Accordingly, Glynn's request for post-judgment interest will be granted.

**CONCLUSION**

For the reasons set forth above, Glynn's motion is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent Glynn seeks a default judgment against CSI, the motion is GRANTED.

2. To the extent Glynn seeks an award of statutory damages under the DMCA, the motion is GRANTED, and Glynn shall have judgment against CSI in the amount of $3500.

3. To the extent Glynn seeks statutory damages under the Copyright Act, the motion is DENIED.

4. To the extent Glynn seeks a permanent injunction, the motion is DENIED.

5. To the extent Glynn seeks attorney's fees and costs in the amount of $6817.77, the motion is GRANTED; to the extent Glynn seeks leave to file documentation

supporting additional fees, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: June 27, 2018

MAXINE M. CHESNEY
United States District Judge